UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

MERRILL LYNCH BUSINESS FINANCIAL
SERVICES INC.,

                             Plaintiff,

                             -against-

D.M.S. DIAMOND CO., INC., MARC STEINBERG, and
"JOHN DOE #1" THROUGH "JOHN DOE #12", the last
twelve names being fictitious and unknown to plaintiff,
being persons having or claiming an interest in or lien
upon the Collateral described in the complaint,

                             Defendants.

07 CV 7048 (LAP)

------------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT OF ITS SUMMARY JUDGMENT MOTION**

      In 1997, defendant D.M.S. Diamond Co., Inc. ("DMS") was granted a $300,000 commercial line of credit by plaintiff Merrill Lynch Business Financial Services Inc. ("MLBFS"). Its principal, Marc Steinberg, personally guaranteed the loan. Defendants defaulted under the note and guaranty and they remain liable for the balance of the debt. As detailed below, there are no material facts in dispute and summary judgment in plaintiff's favor is appropriate.

**Statement of Facts**

      On November 24, 1997, defendant DMS and plaintiff entered into a WCMA Note, Loan and Security Agreement ("WCMA Note", Ex. A to the Declaration of William Sardegna, sworn to November 12, 2007 ("Sardegna Dec.")), under which plaintiff granted DMS a $300,000 commercial line of credit. (Ex. A, ¶ 1(xiv); all Ex. references are to the Sardegna Dec.)

      Under the WCMA Note, DMS promised to repay the plaintiff, on maturity or default, all

sums of all monies that the plaintiff lent to DMS, including interest, attorneys' fees and any late fees. DMS, moreover, waived presentment, demand for payment, protest, notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate and all other notices and formalities. (Ex. A, ¶ 2.)

Additionally, under the WCMA Note, DMS granted MLBFS a first lien on its business assets as collateral for the loan. (Ex. A, ¶ 4(e).)

In order to further induce plaintiff to enter into the WCMA Note, on November 24, 1997, defendant Steinberg gave plaintiff his absolute and unconditional guaranty (the "Guaranty") of DMS's indebtedness and promised to repay the entire indebtedness to plaintiff upon a default of the WCMA Note. (Ex. B.) At all relevant times, defendant Steinberg was a principal of DMS. (Sardegna Dec. ¶ 5.)

The line of credit established under the WCMA Note initially matured on November 30, 1998 (Ex. A, ¶ 1(a)(viii)), but it was extended annually, subject to, in MLBFS's discretion, DMS's continued satisfactory credit condition. (Sardegna Dec. ¶ 6.) In 1999, the line of credit was increased to $400,000. (Ex. C.)

As noted above, under the WCMA Note, DMS promised to repay the line of credit at maturity (Ex. A, ¶ 2), and the uncured failure to make payment when due constitutes an "Event of Default." (Ex. A, ¶ 8(a).) Further, DMS was required to furnish plaintiff with certain financial information during the term of the loan. (Ex. A, ¶ 5.) The uncured breach of this provision also constitutes an Event of Default under the WCMA Note. (Ex. A, ¶ 8(b).) When an Event of Default occurs, MLBFS is entitled to terminate the WCMA line of credit and accelerate the indebtedness. (Ex. A, ¶ 9 (a)(i) & (ii).)

DMS's line of credit matured by its terms on February 28, 2006, but MLBFS determined not

to renew it due to DMS's poor payment performance and insufficient collateral support. DMS was notified of this determination by letter dated February 15, 2006 and MLBFS demanded full repayment. (Ex. D.)

DMS failed to fully repay the loan and this constituted an Event of Default. (Ex. A, ¶ 8(a).) This also constituted a breach under the Guaranty entitling plaintiff to recover from defendant Steinberg. (Ex. B.)

On February 22, 2006, defendant Steinberg informed MLBFS that DMS would voluntarily fully repay the outstanding loan balance by making monthly $8,000 payments through August 2006, at which time he would pay the balance by refinancing with a local bank. (Sardegna Dec. ¶ 10.) Prior to MLBFS preparing a written agreement to memorialize this proposal (the WCMA Note contains a merger clause, Ex. A ¶ 10(o) and plaintiff documents all amendments in writing signed by all parties), MLBFS conducted a lien search on DMS's assets. (*Id.*) This search revealed that DMS, without MLBFS's knowledge, had granted a security interest in its assets to Sterling Bank on January 2005. (*Id.*) The WCMA Note forbids the granting of a security interest in plaintiff's collateral without its written permission. (Ex. A, ¶ 1(a)(xvi), ¶ 4(e) and last par on p. 6.) Therefore, MLBFS decided not to approve the proposed repayment plan and never prepared documentation or other writings for DMS's execution. (Sardegna Dec. ¶ 10.)

On March 24, 2006, MLBFS informed DMS and Steinberg of the Event of Default and demanded full repayment and additional documentation required under the WCMA Note, including documents for the Sterling Bank loan. (Ex. E.) Defendant failed to comply with this demand. (Sardegna Dec. ¶ 11.)

Plaintiff commenced this action by filing the complaint (Ex. F); defendants have answered raising affirmative defenses. (Ex. G.)

As of November 1, 2007, defendants owe MLBFS the sum of $311,313.13, which includes interest due under the WCMA Note through such date and late fees, but is exclusive of further accrued interest, attorneys' fees and other collection costs specifically recoverable under the WCMA Note. (Sardegna Dec. ¶ 13.) This amount gives defendants credit for the $8,000 monthly payments. (Ex. H.)

## Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Golden Pacific Bancorp. v. Federal Deposit Insurance Corp.,* 375 F.3d 196, 200 (2d Cir. 2004). The substantive law underlying the claim determines if a fact is material. *Golden Pacific Bancorp. v. Federal Deposit Insurance Corp.,* 375 F.3d at 200. A factual dispute is only "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249. Once the moving party discharges its burden of demonstrating that no genuine issue of material fact exists, the burden shifts to the nonmoving party to offer specific evidence showing that a genuine issue of fact exists for trial. *See Celotex Corp. v. Catrett*, 477 U.S. at 324. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. at 323-24. The purpose of summary judgment is to "pierce the boilerplate of the pleading and assay the parties' proof in order to determine whether trial is actually required." 11 James Wm. Moore, Moore's Federal Practice, ¶ 56.02 (3d ed. 1999), quoted in *Merrill Lynch Business Financial Services Inc. v. Dia Supply Corp.,*

4

06 CV 5866(JBW), at 7 (E.D.N.Y. June 4, 2007) (Weinstein, J.) (Ex. A hereto).

## Argument

### PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

Summary judgment "is appropriate" in an action on a promissory note upon a showing that there is no material question concerning execution and default. *Royal Bank of Canada v. Mahrle*, 818 F. Supp. 60, 62 (S.D.N.Y. 1993) (*citing Hanam, B.V. v. Kittay,* 589 F. Supp. 1042 (S.D.N.Y.1984); *see also Nutmeg Financial Services, Inc. v. Cowden,* 524 F. Supp. 620 (E.D.N.Y.1981)); *Westrm-West Risk Markets, Ltd. v. Lumbermens Mutual Casualty Co.*, 314 F. Supp.2d 229, 232 (S.D.N.Y. 2004) ("In cases involving notes, guaranties, and surety bonds, an obligee establishes its prima facie case by demonstrating the execution of the obligation at issue, the underlying agreement, and the defendant's failure to pay"). In an action on a guaranty, a prima facie case is established by proof of the existence of the instrument and failure to pay. *Johnson & Johnson Finance Corp. v. BSR Realty L.P.*, 1996 WL 546284, at *2 (E.D.N.Y. 1996); *Bank Leumi Trust Co. v. Meagher*, 1994 WL 455106, at *1 (S.D.N.Y. 1994) (prima facie case on guaranty established by showing principal defaulted, defendant guaranteed debt and amount owed not paid); *see also Merrill Lynch Business Financial Services Inc. v. Heritage Packaging Corp.*, 2007 WL 2815741, *5 (E.D.N.Y. Sep. 25, 2007) (discussing standards on notes and guaranties);

Plaintiff has established, through sworn documentation, its prima facie case establishing the existence of the agreements, debt, and failure to pay. (Sardegna Dec. ¶¶'s 2-9.) Defendants' answer (Ex. H) does not dispute the existence of the agreements nor the debt. Rather, defendants put forth four affirmative defenses: (a) plaintiff is "in prior breach of the parties' contract"; (b) plaintiff's acceptance of monthly payments "modified" the agreement to permit monthly installment payments; (c) laches, and bad faith because defendant cannot repay plaintiff faster due to its poor financial con-

dition; and (d) others' interest in the collateral may be impaired.[1]  These defenses are without merit.

Defendants' modification defense is precluded by the express terms of the WCMA Note.

The WCMA Note contains a merger clause which states, among other things:

> NO PURPORTED EXTENSION OF THE MATURITY DATE, INCREASE IN THE MAXIMUM WCMA LINE OF CREDIT OR OTHER EXTENSION OR AGREEMENT TO EXTEND CREDIT SHALL BE VALID OR BINDING UNLESS EXPRESSLY SET FORTH IN A WRITTEN AGREEMENT SIGNED BY MLBFS. (Ex. A, ¶ 10(o).)

Since defendants have not produced any writing signed by plaintiff modifying the terms of the WCMA Note (specifically, the maturity date or the extension of credit), the modification defense is unavailable to them as a matter of law.  Although the parties had discussed a possible modification, it never came to fruition and was never memorialized in the writing demanded. (Sardegna Dec. ¶ 10.)

Defendants' $8,000 monthly payments do not eliminate their contractual obligation under the WCMA Note and Guaranty to fully repay the entire debt. As noted, the debt is fully due upon maturity and when an Event of Default occurs.  (Ex. A, ¶ 2, ¶ 9 (a)(i) & (ii).)  The WCMA Note has matured and Events of Default have occurred, thereby triggering defendants' obligation to repay the entire debt.  (Sardegna Dec. ¶ 9.)

The laches defense, founded on plaintiff's acceptance of monthly $8,000 payments, is also barred by the explicit terms of the WCMA Note. The WCMA Note provides that plaintiff's acceptance of a "lesser amount than shall be due from" defendant "shall not be deemed an accord and satisfaction or anything other than a payment on account". (Ex. A, ¶ 3(c).) Moreover, DMS agreed in the WCMA Note that plaintiff's acceptance of such lesser amount shall not "prejudice" plaintiff's

---

1  We will not address (d) because plaintiff is not seeking in this motion judgment to foreclose on the collateral. We also cannot address (a) because this is a boiler-plate claim unsupported by any evidence in the record.  It is indisputable that plaintiff complied with its obligation under the WCMA Note by funding the loan to DMS.

right to recover the "balance actually due" (i*d*.) – i.e., the accelerated debt. In addition, DMS agreed that "no failure or delay" on plaintiff's part to exercise its rights or remedies would preclude plaintiff from later exercising such rights or remedies. (Ex. A ¶ 10(a).) DMS also agreed that any waiver of any provision of the WCMA Note or "any consent to any departure by [defendant] therefrom, shall" not be effective unless in writing. (Complaint Ex. A ¶ 10(o).) As noted, there was never any such writing even prepared for execution. Also, defendant Steinberg's Guaranty explicitly provides that his liability "shall in no event be affected or impaired" by "any application of payments or credits" by plaintiff. (Ex. B, third ¶, (e).)

Finally, defendants' "bad faith" defense -- i.e., that it constitutes bad faith to bring an action when plaintiff "cannot possibly obtain repayment – if at all – by maintaining and prevailing upon the instant action" -- is flawed as a matter of law. The alleged inability of a creditor to repay a valid debt is not a legal or factual issue for this Court.

### Conclusion

For the foregoing reasons, it is respectfully requested that plaintiff's motion be granted and that judgment be entered against defendants, plus additional accrued interest and attorneys' fees.

Dated:  New York, New York
        November 12, 2007

SPENCER L. SCHNEIDER (SS-2471)

_____
Attorney for Plaintiff
70 Lafayette Street, 7th Floor
New York, NY 10013
Tel: 212-233-7400
Fax: 212-233-9713
sschneider@slsatty.com

7