# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERRIL LYNCH BUSINESS FINANCIAL SERVICES, Inc., <br> Plaintiff, <br><br> v. <br><br> DIA SUPPLY Corp. *et al.*, <br><br> Defendants. | MEMORANDUM, ORDER <br> and <br> PARTIAL JUDGMENT <br><br> No.06-CV-5866 (JBW) |

JACK B. WEINSTEIN, Senior United States District Judge:

I. INTRODUCTION

Plaintiff Merrill Lynch Business Financial Services, Inc. ("MLBFS") moves for summary judgment in an action to recover on a defaulted loan entered into by defendants Dia Supply Corporation ("Dia") and its guarantors, Gavriel Aharoni ("Aharoni") and Chaim J. Manheimer ("Manheimer"). MLBFS seeks a judgment for a loan in the amount of $1,017,307.54, plus interest, attorney's fees and court costs, possession of collateral not previously turned over to plaintiff, and to dismiss defendants' counterclaims against it.

For the reasons set forth below, plaintiff's motion for summary judgment on the amounts owed to plaintiff by defendants is granted. Defendants' counterclaims are dismissed.

Cross claims between defendants and claims of plaintiff to set aside fraudulent transfers are not yet ripe for decision. *See* Transcript of May 31, 2007, pp. 19, 23-25, 28-32. Further discovery, if any, will be supervised by the magistrate judge on these and any related issues. Motions for summary judgment or prompt trial will be entertained on these issues.

1

## II. FACTS

### A. Procedural History

Defendants defaulted on their million dollar loan from plaintiff. When the borrower Dia Supply Corporation refused to make good on a Repossession Agreement and surrender collateral pursuant to its loan agreement, MLBFS commenced this action on October 30, 2006. It sought an order of seizure and damages.

Plaintiff's motion for a temporary restraining order was granted and its motion for order of seizure was settled by stipulation on November 13, 2006. It ordered Dia to sell its inventory and turn over the proceeds directly to MLBFS. On March 16, 2007, parties stipulated to add Ms. Gigi Aharoni as a new party and to amend the complaint to reflect a new cause of action pursuant to the New York Debtor Creditor Law Section 273 against defendants Gigi Aharoni and her husband, Gavriel Aharoni. On March 23, 2007, the parties stipulated to adding Ms. Fay Manheimer as a defendant in this action and add a cause of action under Debtor Creditor Law Section 273.

Plaintiff's second amended complaint incorporates four causes of action: (1) defendants' breach of a Note and Guaranty; (2) fraudulent conveyance by defendants Gigi and Gavriel Aharoni pursuant to New York Debtor and Creditor Law 273; (3) fraudulent conveyance by defendants Chaim and Fay Manheimer; and (4) entitlement to possession of collateral not previously turned over to plaintiffs pursuant to the November 13, 2006 Stipulation and Order.

Defendants Gigi Aharoni and Gavriel Aharoni agreed to an order of attachment on March 29, 2007 to act as a lien on either's real property in Nassau County. The order also restrained the defendants from "removing, conveying, selling, pledging, assigning, encumbering, or otherwise

transferring any real or personal property."

    B. Evidence

        1. Breach of Contract

On January 13, 2000 plaintiff entered into a Working Capital Management Account (WCMA) Loan and Security Agreement with defendant Dia, extending to Dia a line of credit in the amount of $500,000. Defendants Aharoni and Manheimer gave MLBFS their continuing, absolute and unconditional guaranty ("Guaranty") of Dia's indebtedness under the WCMA Note and agreed to make payments on the loan in the event of default. At the time plaintiff issued the line of credit, "Dia granted MLBFS a security interest in all of its accounts, chattel paper, contract rights, inventory, equipment, fixtures, general intangibles, deposit accounts, documents, instruments, investment property and financial assets, wherever located, and all proceeds" as collateral on the loan. Plaintiff's ex. A ¶1.1(f), ¶3.4(a).

The parties increased the line of credit to: $700,000 on February 15, 2001 (defendants' ex. K), $850,000 on October 14, 2002 (defendants' ex. L) and finally to $1,000,000 on March 31, 2005 (plaintiff's ex. C), extending the maturity date of the loan to March 31, 2006. Under the 2005 Extension Agreement, defendants "'acknowledge[d], warrant[ed] and agree[d], as a primary inducement to MLBFS" to increase the loan amount and extend its maturity. Plaintiff's ex. C. In addition, the defendants affirmed that they were not in default on the loan and that all warranties made under the Note and Guarantee were true. In the Agreement, Dia and its principals waived all claims against MLFBS concerning the WCMA Note and Guaranty and all other matters, as well as all defenses to payment. (plaintiff's ex. C pp. 1-2).

Plaintiffs gave Dia a temporary extension until July 31, 2006 to repay the entire debt. Dia

defaulted on the loan.

On September 21, 2006, defendants Dia and Gavriel Aharoni accepted conditions under a Peaceful Repossession Agreement offered by plaintiff. In a letter to MLBFS dated September 18, 2006, Manheimer stated that he had no objection to the Repossession Agreement. By signing the agreement Dia acknowledged it was in default on the loan, entitling plaintiff to possession of the Collateral described in the WCMA Note. The Repossession Agreement also contained a Guarantor's Release which discharged MLBFS

> from any and all claims or demands of whatsoever nature, whether known or unknown, whether having arisen or hereafter arising out of or relating to (i) the Loan Documents; (ii) MLBFS' actions in connection with or pursuant to the Loan Documents; and/or (iii) any other matter or dealings between or among Dia and MLBFS.

Plaintiff's ex. E §A(5). Dia, and the guarantors, are prohibited by their agreement from suing MLBFS in connection with any "damage, loss, or injury . . . arising out of" the released claims yet remains liable for any deficiency. *Id.*

On September 29, 2006, Dia attempted to retract its agreement to surrender the collateral. This action followed.

### 2. Fraudulent Conveyances of Marital Residences

On January 13, 2000, Defendant Gigi Aharoni agreed that any judgment against her husband Gavriel Aharoni could be enforced against their marital residence jointly purchased by Gigi and Gavriel Aharoni on June 8, 1995. On September 25, 2005, Gavriel Aharoni transferred his entire interest in the residence to his wife, apparently without consideration. *See* Transcript May 31, 2007 at p. 9. The Aharonis certified to plaintiff that they jointly owned the marital residence as of March 8, 2006. Gigi Aharoni mortgaged the property on October 6, 2006 for

$600,000. Her husband Gavriel Aharoni wired $400,000 to his counsel in Israel. In September 2006, $400,000 was invested in a closely held Israeli company.

On May 15, 2006, defendant Chaim Manheimer transferred his entire interest in a home, jointly purchased by Manheimer and his spouse, to his wife Fay Maneheimer, conceededly without consideration.

III. LAW
    A. Choice of Law

Diversity cases begin with New York's law on choice of law. *See Merrill Lynch Business Financial Services, Inc. v. Famous-Maid Brassiere Corp.*, 02-CV-1329(NG), slip op. at 5 (E.D.N.Y. July 28, 2003); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). According to New York law, a breach of contract claim is governed by the choice of law clause contained in the loan documents. *See Rosenberg v. Pillsbury Co.*, 718 F. Supp. 1146, 1150 (S.D.N.Y. 1989).

The governing law, pursuant to a choice of law clause within the WCMA Loan and Security Agreement, Exhibit A, is that of the State of Illinois. According to the loan document, section 3.7(i), "the loan agreement and, unless otherwise expressly provided therein, each of the Additional Agreements, shall be governed in all respects by the laws of the State of Illinois." In section 3.7(m), defendants waived all rights to contest jurisdiction and venue or commence any action against MLBFS except in the County of Cook and the State of Illinois.

    B. Standard for Relief

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a

judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505(1986). *See also Mitchell v. Washingtonville Central School District*, 190 F.3d 1, 5 (2d Cir. 1999).

The burden rests initially with the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see also Celotx Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). If the moving party appears to meet this burden, the opposing party must produce evidence that raises a material question of fact to defeat the motion. *See* Fed. R. Civ. P. 56(e). This evidence may **not** consist of "mere conclusory allegations, speculation or conjecture[.]" *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996). *See also Delaware & Hudson Ry. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue.").

The mere existence of some peripheral factual disputes will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

In deciding the motion, all inferences from, and ambiguities in, the underlying facts are to be resolved in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348 (1986). Only when reasonable minds could not differ as to the import of the proffered evidence is summary judgment proper. *See Anderson*, 477 U.S. at 250-52; *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

"In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are factual issues to be tried." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986). Critical is recognition of the jury's fact-finding primacy:

> It is well established that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment. If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.

*Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) (quotation marks omitted). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp.*, 477 U.S. at 323-24. "Under Rule 56(e) of the Federal Rules of Civil Procedure, general denials are insufficient to raise a triable issue of fact and cannot defeat a motion for summary judgment. Indeed, the purpose of summary judgment is to 'pierce the boilerplate of the pleading and assay the parties' proof in order to determine whether trial is actually required." *Merrill Lynch Business Financial Services, Inc. v. Famous-Maid Brassiere Corp.*, 02-CV-1329(NG), slip op. at 5 (E.D.N.Y. July 28, 2003) (*quoting* 11 James Wm. Moore, *Moore's Federal Practice*, 56.02 (3d ed. 1999).

A. Summary Judgment on Promissory Note

In an action on a promissory note the moving party must show that there is no material question concerning the loan's execution and default to obtain an order for summary judgment. *Royal Bank of Canada v. Mahrle*, 818 F. Supp. 60, 62 (S.D.N.Y. 1993); *WestRM-West Risk Markets, Ltd. v. Lumbermens Mutual Casualty Co.*, 314 F. Supp.2d 229, 232 (S.D.N.Y. 2004) ("In cases involving notes, guaranties, and surety bonds, an obligee establishes its prima facie

7

case by demonstrating the execution of the obligation at issue, the underlying agreement, and the defendant's failure to pay.").

A loan institution may succeed on a summary judgment motion on a guaranty by proving the existence of the instrument and failure to pay. *Johnson & Johnson Finance Corp. v. BSR Realty L.P.*, 1996 WL 546284, at *2 (E.D.N.Y. 1996) (granting summary judgment to plaintiff lender who obtained written guarantees on the $2,000,000 loans from defendant guarantors); *see also Bank Leumi Trust Co. v. Meagher*, 1994 WL 455106, at *1 (S.D.N.Y. 1994) (requiring the lender to show 1) defendant defaulted on its debts to lender, 2) defendants guaranteed and therefore may be held liable on the loans, and 3) the amount owed to lender went unpaid, in order to recover on a guaranty).

B. Fraudulent Conveyance

Section 270 of the New York Debtor & Creditor Law provides for fraudulent conveyances of assets by a debtor. New York law requires that fair consideration be given in any conveyance of property. NY CLS Dr & Cr § 272 (2007). Section 273 specifically addresses the status of conveyances that will render the conveyer insolvent as to creditors. Under section 273, "every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." A common indication "of fraud is the transfer of property by a debtor in anticipation of a suit against him, while a suit against him is pending, or while judgment are outstanding against the debtor." 37 Am Jur 2d Fraudulent Conveyances and Transfers § 15. To establish a fraudulent conveyance under this provision, a party must prove that: (1) the transfer was a conveyance within the

meaning of the statute; (2) the conveyance was made by a person who is or will thereby be rendered insolvent; and (3) the conveyance was made without fair consideration. *U.S. v. Hirk*, 2006 WL 681207 (E.D.N.Y. 2006) (citing NY CLS Dr & Cr § 273 (2007)). The adverse evidentiary effect of a sale in anticipation of litigation may be overcome by "proof that the purchaser acted in good faith and paid a valuable consideration." *Id.*

IV. APPLICATION OF LAW

    A. Claims I (Breach of Contract) and IV (Repossession of Collateral)

Plaintiff has established a prima facie case for an action on a promissory note and guaranty. MLBFS offers evidence of a valid note and guaranty which sets forth its obligations as the lender, Dia as the borrower, and Aharoni and Manheimer as the guarantors. The plaintiff also presents proof of defendants' default on the loan, and the resultant damages to plaintiff.

Defendants Dia and Gavriel Aharoni acknowledge the existence of the Note and Guaranty yet deny any defaults on the loan (plaintiff's ex's J & K ¶¶ 8, 10, 12); defendant Manheimer denies knowledge of both the Note and Guaranty as well as any default. Plaintiff's ex. L ¶¶ 1, 3. General denials do not raise a genuine issue of fact. The court in *Merrill Lynch Business Financial Services v. Famous-Maid Brassiere Corp.* held that general denials of a loan and its guaranty were unsupported defenses to a motion for summary judgment. 02-CV-1329(NG), slip op. at 5 (E.D.N.Y. July 28, 2003). Plaintiff's presents evidence of a valid note (plaintiff's ex. A) and guaranty (plaintiff's ex. B), as well as Credit Line Extension (plaintiff's ex. C), with guarantors' signatures.

There is ample proof of defendants' default on the loan and the subsequent injury to the lender. When defendants failed to make payment on their loan, MLBFS issued a Notice of Non-

Renewal and Maturity Date Events, granting Dia additional time repay its obligations. Plaintiff's ex. D. This document describes the consequences of Dia's default and MLBFS's right to recover for the loan. In the September 14, 2006 Repossession Agreement, Dia acknowledged, and Gavriel Aharoni confirmed by his signature, that Dia defaulted on its loan and that "MLBFS has the right to, and is warranted in, exercising his rights and remedies against MLBFS' collateral . . . ." (plaintiff's ex. E ¶A(1)). In a letter dated September 18, 2006 Chaim Manheimer consented to the Repossession Agreement (plaintiff's ex. F). After deducting $15,472.56 in proceeds and inventory turned over to MLBFS under the stipulation, plaintiff calculates its injury as consisting of: (1) principal of $1,034,115.90; and (2) accrued interest of $6,756.74.

Any allegations that plaintiff failed to act promptly in taking possession of the Collateral both prior to September 2006 and after the signing of the Repossession Agreement and thereby forfeits its repossession are futile. The Guaranty signed by Gavriel Aharoni and Chaim Manheimer protected the rights of MLBFS to repossess Collateral on a defaulted loan. The liability of the two guarantors is "in no event [ ] affected or impaired by . . . (c) any failure, neglect or omission on the part of MLBFS to realize upon or protect any part of the Obligations, or any collateral or security." (Plaintiff's ex. B 3rd par.)

Plaintiff is entitled to summary judgment on claim I, damages as a result of defendants' breach of the loan agreement, and claim IV, repossession of the collateral by virtue of this breach to satisfy this debt. No evidence and nothing at the argument of the motion suggests that the collateral was not disposed of for its full value.

### 1. Defendants' Defense Unfounded

Defendants' affirmative defenses and two counterclaims emanate from Dia's and Gavriel

Aharoni's allegations that Chaim Manheimer, while a principal of Dia, was using the line of credit for "non-corporate" purposes to the detriment of Dia and in breach of Dia's obligations to MLBFS, and that MLBFS "knew or should have known" of Manheimer's conduct and its consequential harm to Dia. Defendants contend that MLBFS breached the Loan Agreement and Guaranty by not terminating the line of credit to Dia and accelerating repayment. The defendants cite the WCMA Loan and Security Agreement, paragraph 1.1(j), addressing the "General Funding Conditions" to any WCMA Loan by MLBFS. Specifically, "(ii) there shall not have occurred and be continuing any material adverse change in the business or financial condition of Customer or any Guarantor" (1.1(j)). Defendants assert that MLFBS had a responsibility to call the loan when it learned that Dia's tangible net worth dipped below the initial $500,000 line of credit.

The language in the Loan Agreement does not support the defendants' position that plaintiff had an obligation to terminate the loan. It merely states that "MLBFS *shall not be obligated to make* any WCMA loan, and *may* without notice refuse to honor any such request by Customer, if at the time of receipt by MLBFS of Customer's request: (i) the making of such WCMA Loan would cause the Maximum WCMA Line of Credit to be exceeded; or (ii) the Maturity Date shall have occurred, or the WCMA Line of Credit shall have otherwise been terminated in accordance with the terms hereof; or the Maturity Date shall have occurred, or the WCMA Line of Credit shall have otherwise been terminated in accordance with the terms hereof . . ." Ex. A ¶2.2(c) (emphasis added). Plaintiff lender had the *option* of terminating the loan but had no legal duty to refrain from extending credit to Dia.

A fair and proper reading of 3.3(h) of the WCMA Loan and Security Agreement demands

11

that the defendants, the *borrower*, rather than the lender, maintain a minimum tangible net worth of $500,000. Nowhere in the agreement does MLBFS agree to monitor Dia's net worth and cede its right to repayment if it fails to do so.

Neither the Loan Agreement nor the Guaranty signed by both parties limits MLBFS's right to enforce repayment of the loan in court. Paragraph 3.7(m) in the Loan Agreement states in capital letters that the "[c]USTOMER ACKNOWLEDGES THAT THIS LOAN AGREEMENT IS BEING ACCEPTED BY MLBFS IN PARTIAL CONSIDERATION OF MLBFS' RIGHT AND OPTION, IN ITS SOLE DISCRETION, TO ENFORCE THIS LOAN AGREEMENT..." Plaintiff's ex. A.

The borrowers are precluded from raising counterclaims against MLBFS. Both paragraph 3.7(m) in the Loan Agreement (plaintiff's ex. A) and the final paragraph in the January 13, 2000 Guaranty (plaintiff's ex. B) state that the "MLBFS and customer hereby each expressly waive any and all rights to a trial by jury in any action, proceeding or counterclaim brought by either of the parties against the other party with respect to any matter relating to, arising out of or in any way connected with the WCMA Line of Credit, this Loan Agreement, any additional agreements and/or any of the transactions which are the subject matter of this Loan Agreement. Customer further waives the right to bring any non-compulsory counterclaims." Defendant Dia agreed to the conditions of a Peaceful Repossession Agreement, signed by defendant Gavriel Aharoni.

> (4) Dia hereby expressly waives any and all claims and causes of action it may now or in the future have in respect of the validity and priority of MLBFS' liens and in respect of MLBFS' exercise of its rights and remedies in respect of the Collateral as contemplated hereby, under the Loan Documents and the UCC.
> (5) Dia hereby irrevocably releases and discharges MLBFS, its affiliated companies, and its agents, officers and successors and assigns from any and all claims or demands of whatsoever nature,

>whether known or unknown, whether having arisen or hereafter arising out of or relating to (i) the Loan Documents; (ii) MLBFS' actions in connection with or pursuant to the Loan Documents; and/or (iii) any other matter or dealing between or among Dia and MLBFS.

Plaintiff's ex. E, ¶¶4, 5.

Defendants offer no evidence nor attempt to substantiate their defense that they were coerced into signing an adhesive form contract in either defendant Manheimer's answer or defendants Dia, Gigi or Gavriel Aharoni's memorandum of law in opposition to plaintiff's motion for summary judgment. Conclusory statements are not sufficient to successfully oppose a motion for summary judgment. *See Hugh Symons Group, PLC. v. Motorola, Inc.*, 292 F.3d 466, 470 (5th Cir. 2002) (holding that "unsubstantiated assertions are not competent summary judgment evidence").

All counterclaims alleged by defendants against plaintiff are dismissed. There is no evidence submitted or proffered on argument to support any of them.

### B. Claims II and III-Fraudulent Conveyance

Gavriel Aharoni fraudulently conveyed his entire interest in a jointly owned residence to his wife without consideration on September 25, 2005. Blough Dec. ¶¶'s 22-23. After the transfer, Gavriel Aharoni's debt outweighed the value of his personal assets, rendering Mr. Aharoni insolvent within the meaning of New York Debtor and Creditor Law section 271. Chaim Manheimer's May 15, 2006 conveyance of his entire interest in a jointly purchased home to his wife also falls within New York's Debtor and Creditor Law. Where such a conveyance is fraudulent as to a creditor, the creditor is entitled to relief. *See Hirko v. U.S.*, 2006 WL 681207 (E.D.N.Y. 2006) (finding transfer of property from husband to wife to be fraudulent under

13

section 273).

Plaintiff provides evidence in the Blough Declaration to support its allegations of Mr. Gavriel Aharoni's fraudulent conveyance of property. Mr. Aharoni's conveyance rendered him insolvent; without the value of the home, Mr. Aharoni's listed assets total $710,000, less than the debt he owes to MLBFS. Aharoni's conveyance was made without consideration. Blough Declaration ¶23. Defendants offer no evidence to support their position that Gavriel Aharoni's conveyance was made for fair consideration and did not render Mr. Aharoni insolvent (answer to amended complaint, ¶50).

MLBFS's third cause of action, fraudulent conveyance conducted by Mr. Chaim Manheimer to his wife Fay Manheimer. The plaintiff alleges in its complaint that Mr. Manheimer transferred his entire interest in their marital home to his wife without consideration on or about May 15, 2006 (second amended complaint). In response to plaintiff's interrogatories, defendant Manheimer admits that no consideration was exchanged. Response to Interrogatory No. 11. This transfer of property, made for no consideration, allegedly rendered Mr. Manheimer insolvent. Defendants neither address nor offer evidence to dispute this charge in any of their subsequent answers.

There is apparently some very limited need for discovery in this case on the issue of fraudulent transfers and cross claims. According to Rule 26 of the Federal Rules of Civil Procedure, "[t]he frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that . . . (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the cause, the amount in controversy, the parties' resources, the importance of the issues

at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Rule 56(f) of the Federal Rules of Civil Procedure permits the court to order that discovery continue so that a party opposing a motion for summary judgment may justify its opposition.

## V. DEFENDANTS' CROSS-CLAIMS

Defendant Gavriel and defendant Chaim Manheimer's cross-claims against their co-defendants remain open. Each seeks indemnification or contribution from co-defendant if found to be personally liable for the contractual obligations of Dia. Both Gabi Aharoni and Chaim Manheimer signed a guaranty of repayment of the loan in January of 2000. The guaranty provides that both defendants are "jointly and severally" for the "prompt, full, and faithful performance and discharge" by Dia of Dia's contractual obligations to MLBFS. (Plaintiff's Ex. B) Gabi Aharoni and Chaim Manheimer are each liable for 50% of the repayment price of the loan, interest accumulated on the loan and lawyers' fees accrued over the course of this litigation.

Defendant Dia's cross-claim against co-defendant Chaim Manheimer is held in abeyance. Dia sets for four separate cross-claims against Chaim Manheimer, alleging (1) damages by Manheimer's breach of contract with Dia; (2) breach of duty of loyalty and good faith to Dia; (3) diversion of business opportunities; and (4) misappropriation of Dia's money and other property. (Defendant Dia's Cross-Claims to the Second Amended Complaint). Dia fails to satisfy Rule 13(g) of the Federal Rules of Civil Procedure, requiring that the claim arise "out of the transaction or occurrence that is the subject matter of the original action." "Rule 13(g) does not authorize a party to bring an unrelated cross-claim." *Pacific Mut. Life Insurance Co. v. American Nat'l Bank & Trust Co.*, 110 F.R.D. 272, 278 (N.D.Ill. 1986) (dismissing cross-claim that related tangentially to the mortgage transaction at issue in the main suit). Dia's cross-claims are separate

and apart from the main action concerning defendants' default on a loan extended by MLBFS. None of the cross-claims are between persons of diverse jurisdiction. None of them involve any federal claim. Yet, the court and parties have devoted some attention to their resolution. They should not be dismissed at this time.

## VI. CONCLUSION

Plaintiff's motion for partial summary judgment is granted as to the amount claimed. Submit partial judgment with costs, legal fees and interest as of May 31, 2007.

Plaintiff's collateral and protection against further fraud is apparently protected by liens. *See* Transcript of May 31, 2007, p.16.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: June 4, 2007
   Brooklyn, NY