UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
MERRILL LYNCH BUSINESS FINANCIAL
SERVICES, INC.,

                    Plaintiff,

-against-

D.M.S. DIAMOND CO., INC., MARC
STEINBERG, and "JOHN DOE #1 through
"JOHN DOE #12," the last twelve names
being fictitious and unknown to plaintiff, being
persons having or claiming an interest in or lien
upon the Collateral described in the Complaint,

                    Defendants.
------------------------------------------------x

07 CV 7048 (LP)

DECLARATION OF
MARC STEINBERG

    I, Marc Steinberg, declare as follows:

    1. I am the principal shareholder and President of the "mom and pop" corporation, co-defendant D.M.S. Diamond, Inc. ("DMS"). The initials "DMS" stand for my wife, Dalia's first name, then mine, and our last name (i.e., Dalia and Marc Steinberg). My wife helps me out when she can but otherwise works outside the home part-time and cares for our two daughters.

    2. My business consists of the purchase and sale of used, or "estate" jewelry. I work out of a booth in a larger store on 47th Street in Manhattan, in the area known as the "Diamond District". My workplace is modest, and I have earned a modest living over the past 25 years or so, with the usual ups and downs experienced by any marketplace dependent on sales of jewelry. In practice and out of practical necessity, the pieces (i.e., jewelry and stones) I buy are too expensive for me to purchase outright on my own, and

as a result (and as is a very widely-adopted practice in my industry), I have acquaintances who buy these items together with me.

3. Thus, my entire inventory is nearly 100% "partnered", i.e., owned together with someone else, sometimes several other individuals. There are no formal, written contracts between us, in accordance with longstanding custom (borne of trust and necessity) in the diamond district. We do business on a handshake and we take each other at our word; this is the way it has been ever since I began working in this field, and the system works.

4. I have no legal training or graduate-level education, and to be quite honest, while I certainly applied for and received the $400,000.00 credit from plaintiff as of early 2006, I did not have a lawyer review the loan documents at the inception of the loan, any more than I would have felt compelled to hire a lawyer when I refinanced the mortgage on my home. I didn't have the money to hire legal counsel and never suspected that plaintiff would one day, *while I was in the process of paying the loan off,* sue me and rely on all manner of minute technicalities in trying to bully me into foreclosure and bankruptcy, as plaintiff is now doing.

## THE INSTANT LOANS

5. I do not deny that plaintiff loaned me a total of $400,000. I certainly do claim that the agreements I entered into were very detailed and complicated and that I did not fully understand either the language or consequences of every word that is now being cited against me. However, I needed the money to keep my business afloat, and so I signed everything presented to me.

6. Prior to March of 2006, my monthly repayments on the Merrill Lynch loans (i.e., the ones at issue herein) were in amounts far less than $8,000. Indeed, when

plaintiff's loan officer told me I had maxed out and would have to start repaying the principal and interest, I originally tendered $5,000, but was told by WILLIAM SARDEGNA that that amount was not enough (although plaintiff accepted the $5,000, of course).

7. Plaintiff and I began to negotiate a payoff term. **There certainly were no new monies contemplated being advanced to me, so the only terms we needed to agree on were the payout term itself (i.e., how long), and the interest rate that would apply**. To this end, WILLIAM SARDEGNA, for plaintiff, and I began communicating but it soon became apparent that he unreasonably refused to believe that I didn't have the ability to simply write plaintiff out a check for $400,000.00. As a result, **WILLIAM SARDEGNA agreed and wrote me, in an email dated March 30, 2006** (copy annexed hereto as Exhibit 1), that **"minimum monthly payments of $8,000 and any further lump-sum payments _will be acceptable_"** (Ex. 1; emphasis added).

8. Thus, commencing with the payment due April of 2006, I have paid, and continue to pay to plaintiff the sum of **$8,000 monthly**, and these payments continue to date. In fact, since I started making these repayments against the $400,000[*] I owed plaintiff as of March, 2006, the principal obligation, even after interest and a whopping late charge plaintiff imposed on me, is now down to nearly **$300,000** (including the payment due and made for November, 2007; after the December payment, the debt will be down to **less than $300,000**).

9. It is important to note that plaintiff has not claimed that it has lost <u>one penny of profit or income</u> as a result of lending me what it did. Indeed, the allegations which have been thrown about in this matter have suggested only that I failed to provide additional

---

[*] I also was made to pay a $20,000 late charge, contrary to and in breach of Mr. Sardegna's own agreement in Ex. 1 hereto.

-3-

and continuing reports and financial information to plaintiff, even during this payback period. See, for example, the Complaint, paragraphs 14, 15 and 16.

10. Indeed, even in his letter to this Court requesting permission to make this motion, counsel for plaintiff pointed out that my failure to provide financial information constituted a default calling for acceleration of the entire debt. See annexed Exhibit 2, a copy of said counsel's letter to this court dated October 4th, 2007.

11. *But once the plaintiff loaned me all it was going to loan me, it made no sense that I should spend $6,000 on the formal financial statements plaintiff was demanding, solely in order to decide on a payback amount and term*, and hence I could not and did not provide such information. Instead, I simply began paying back the loan, and was doing so, religiously and regularly at $8,000 a month, when this action was commenced.

12. The fact is, however, that plaintiff only started this lawsuit as a means to coerce me into agreeing to a richer and quicker payout. Even as the parties prepared to file papers for and against the instant motion for summary judgment, plaintiff had its lawyer email mine with new demands which would only serve to enhance the interest rate on the money I still owe plaintiff and to lessen the time for repayment by *all of one year over what I had offered!* See annexed Exhibit 3, a copy of email communications between my lawyer and plaintiff's, wherein plaintiff's counsel Spencer Schneider, Esq., writes my attorney that plaintiff would settle this case were I to agree to pay 3% higher interest and pay off the loan in full within 18 months (whereas my best offer up until then had been to repay the entire amount in *2-and-a-half years* )(*Id.*). My lawyer advises me that, while settlement negotiations and discussions are inadmissible at a trial, the rule does not apply to motion papers and, in any event, this Court, I am advised, encouraged

such negotiations in a telephone conference with counsel (although I understand that, rather than to pressure the plaintiff to be more reasonable, Her Honor told my lawyer that *I was the one* who would have to do better—something that to this day I cannot understand. I am not rich; my home is mortgaged beyond its actual market value, due to lessening real estate values lately, and I have no other means to repay this now-$300,000-plus obligation in one lump sum).

13. In any event, I do not believe that I am in breach of the contract(s) with plaintiff, in that:

    a. I have been repaying, and am continuing to repay all sums owed, at the fantastic rate of $8,000 per month, while my attorney advises me that he could find no case, including those cited by plaintiff in its Memorandum of Law submitted herewith, in which a party sued to recover a loan **at a time when the debtor was paying regularly**;

    b. I am also advised that parties to a written agreement can modify that agreement's terms, **by their conduct**, and in this case, I write checks every month and send them to Merrill Lynch, and Merrill Lynch, every month, accepts them with the result that each month I owe them **less and less**;

    c. In any event I believe that Merrill Lynch has agreed to modify our agreements based upon, if not conduct, then on the emailed communication annexed hereto as Ex. 1.

14. The fact is that I am 60 years old, have no retirement plan, no life insurance and I am uninsurable because I have hepatitis "C" and cannot obtain such insurance. I have two children in college (although they still live at home), and business has fallen 50% over the past year. *A judgment will ruin my credit and could well jeopardize my*

*business's very viability, as it is extremely dependent on credit.* To this day, to this very minute, I still cannot understand why Merrill Lynch sued, except that it must believe that I am making all this up and can really pay everything and that I am just giving everyone here a hard time. But that is stupid. If I could pay, I would have done so and ended this madness already, and avoided legal fees as well.

15. Plaintiff's lawsuit is costing me money which could have gone to plaintiff, and these proceedings continue to be a financial drain on me. Even while this motion was pending, plaintiff was asking for financial "compilations" (see Ex. 3, second sentence of first communication from Spencer Schneider), **which I have now provided to plaintiff even as parties, counsel and court rush to judgment against me which will end all hope of plaintiff's recovery and may force me into bankruptcy.**

16. It is remarkable that this lawsuit was brought, and I reiterate that plaintiff's sole motivation, knowing it would not get its money any faster, was to coerce me into agreeing to pay yet additional interest and late charges, because there simply is no other explanation.

17. In any event, I believe there are genuine, disputed, material issues of fact between the parties, as outlined hereinabove, and I respectfully request that this court deny plaintiff's instant motion.

18. In closing, I note that, in addition to having paid nearly $100,000 in principal since the alleged default in March, 2006, I have also been tagged with, and have paid, a very onerous late charge to plaintiff (referred to in Ex.1). Thus, *plaintiff sues and seeks judgment notwithstanding that it has not alleged one penny of loss, not lost profit, not lost anything*, in connection with these loans. We truly live, apparently, not in a

democracy, but in an aristocracy, and I guess I am just not wealthy enough for this Court and Merrill Lynch.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on the date set forth below.

DATED this 23rd day of November, 2007.

_/s/ Marc Steinberg_
Marc Steinberg

Sworn to before me this
23rd day of November, 2007

_/s/_

DAVID H. LEDGIN
Notary Public, State of New York
No. 02LE6025248
Qualified in Nassau County
Commission Expires May 24, 20__

# EXHIBIT 1

## Sardegna, William (MLBFS-Chicago)

**From:** Sardegna, William (MLBFS-Chicago)
**Sent:** Thursday, March 30, 2006 5:39 PM
**To:** 'dmsdiamondco@aol.com'
**Cc:** Grasser, Michelle (MLBFS - Chicago)
**Subject:** MLBFS/ DMS Diamond Inc.

Marc,

The following will be needed as soon as possible AND on a monthly basis going forward:

- Accounts Receivable Aging with Invoice Detail
- Accounts Payable Listing
- Inventory Listing with consignment/loaned/shared items asterisked
- Sales Ledger with in-state and out-of-state detail
- Corporate Financials

I understand you are also forwarding copies of the signed annual tax returns once completed. Upon receipt of current reporting, I will be able to review a 90-day extension as discussed and forward you documentation to sign. It is imperative updated information is received in order to proceed with documentation. I will include a 50.0% waiver of the $19,553.52 late fee, provided that terms and conditions under the agreement are met. Minimum monthly payments of $8,000 and any further lump-sum payments will be acceptable.

Please begin refinance attempts in order to honor this extension and forward copies of bank correspondence. This will ensure matters will be resolved within the 90-day agreement. Based on your current relationships with Sterling and Washington Mutual (WAMU), they will most likely be the best candidates for immediate financing. Note that if you pursue other banks, they will require the Sterling relationship be closed with UCC terminations to follow. This will take some time so plan accordingly.

Please complete the attached personal financial statement in detail, reflecting your current status. Include all real estate interests, securities and family/third party loans (ie. contingent liabilities). For an accurate depiction of the market value on you primary residence, WAMU may have a recent appraisal from the latest refinance (A $500,000 home equity loan would not be issued if the market value is $400,000).

I will fax a copy of this email to David H. Ledgin at 516-747-1211 (no email address on file).

Call if you have questions.

Regards,
Bill Sardegna

Merrill Lynch
Business Financial Services
222 N. LaSalle, 17th Floor
Chicago, IL 60601
(312) 269-4461
Fax (312) 499-3252



Personal Financial
Statement F...

1

# EXHIBIT 2

[Handwritten notes at top: "TO DO (1) Research of law re: signatures on / check for modification of written k / (2) Review every word of the subject agreements"]

**SPENCER L. SCHNEIDER, Esq.**

ATTORNEY AT LAW
70 Lafayette Street, New York, NY 10013
Ph: 212-233-7400, Fx: 212-233-9713
www.slsatty.com, sschneider@slsatty.com

October 4, 2007

<u>Merrill Lynch Business Financial Services Inc. v. D.M.S. Diamond Co. et al.</u>
<u>U.S. District Court, Southern District of N.Y., 07 CV 7048 (LAP)</u>

Dear Judge Preska:

    I represent plaintiff and am writing to request a pre-motion conference in advance of moving for summary judgment.

    This is a diversity breach of contract action on a note and personal guaranty. The complaint alleges that in November 1997 plaintiff granted a $300,000 commercial line of credit to defendant D.M.S. Diamond Co., Inc. ("D.M.S. Diamond") under a note which was unconditionally guaranteed by defendant Marc Steinberg, D.M.S. Diamond's principal. The line of credit was renewed annually subject to D.M.S. Diamond's continued creditworthiness. In order to assess this, D.M.S. Diamond was required under the note to provide certain financial information on a regular basis, the failure to do so constituting a default causing the note to mature and the debt to accelerate. (Complaint ¶ 14; Ex. A ¶'s 5, 8(b), 9(a)(i)(ii).) D.M.S. Diamond failed to provide this information and the line of credit matured on February 28, 2006. The entire debt accelerated, but D.M.S. Diamond failed to repay it, although it continued to pay interest which plaintiff accepted without prejudice. This suit followed and defendants have appeared. Their answer admits the existence of the loan documents but claims that plaintiff's acceptance of monthly interest payments of $8,000 on the accelerated debt modified the parties' agreement. (Answer p. 2.)

    Plaintiff believes this is a straightforward case presenting legal issues only which can be decided by this Court. Summary judgment "is appropriate" in an action on a promissory note upon a showing that there is no material question concerning execution and default. *Royal Bank of Canada v. Mahrle*, 818 F. Supp. 60, 62 (S.D.N.Y. 1993); *see also Camofi Master LDC v. College Partnership, Inc.*, 452 F. Supp.2d 462, 470 (S.D.N.Y. 2006) (actions on promissory notes "appropriately decided" by summary judgment); *WestRM-West Risk Markets, Ltd. v. Lumbermens Mutual Casualty Co.*, 314 F. Supp.2d 229, 232 (S.D.N.Y. 2004) ("In cases involving notes, guaranties, and surety bonds, an obligee establishes its prima facie case by demonstrating the execution of the obligation at issue, the underlying agreement, and the defendant's failure to pay"); *Nutmeg Financial Services, Inc. v. Cowden*, 524 F. Supp. 620 (E.D.N.Y. 1981). In an action on a guaranty, a prima facie case is established by proof of the existence of the instrument and failure to pay. *Johnson & Johnson Finance Corp. v. BSR Realty L.P.*, 1996 WL 546284, at *2 (E.D.N.Y. Sept. 19, 1996); *see also) Orix Financial Services, Inc. v. Precision Charters, Inc.*, 2007 WL 2042499, at 1 n.2 (S.D.N.Y. July 13, 2007) (interpretation of unambiguous guaranty left to court; summary judgment granted); *Bank Leumi Trust Co. v. Meagher*, 1994 WL 455106,

The Honorable Loretta A. Preska
October 4, 2007
Page 2

at *1 (S.D.N.Y. 1994) (prima facie case on guaranty established by showing principal defaulted, defendant guaranteed debt, and amount owed not paid).

Defendants' defense fails to raise "specific evidence showing that a genuine issue of fact exists for trial", *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and thus does not preclude the grant of summary judgment. At most, the defense raises issues of contract interpretation resolvable by the Court on the proposed motion. Plaintiff's acceptance from D.M.S. Diamond of monthly payments of $8,000 on the accelerated debt did not modify the parties' agreement or preclude this suit. The note specifically provides that plaintiff's acceptance of a "lesser amount than shall be due from" defendant "shall not be deemed an accord and satisfaction or anything other than a payment on account". (Complaint Ex. A ¶ 3(c).) Moreover, defendant D.M.S. Diamond agreed in the note that plaintiff's acceptance of such lesser amount shall not "prejudice" plaintiff's right to recover the "balance actually due" (*id.*) – i.e., the accelerated debt. In addition, defendant agreed that "no failure or delay" on plaintiff's part to exercise its rights or remedies would preclude plaintiff from later exercising such rights or remedies. (Complaint Ex. A ¶ 10(a).) Defendant also agreed that any waiver of any provision of the note or "any consent to any departure by [defendant] therefrom, shall" not be effective unless in writing. (Complaint Ex. A ¶ 10(o).) (There was never any such writing.) The note also contained a merger clause. (*Id.*) Moreover, defendant Steinberg's guaranty explicitly provides that his liability "shall in no event be affected or impaired" by "any application of payments or credits" by plaintiff. (Complaint Ex. B, third ¶, (e).)

Therefore, plaintiff respectfully requests a pre-motion conference in advance of making the proposed motion.

Respectfully,

Spencer L. Schneider

The Honorable Loretta A. Preska
 U.S. District Judge, Southern District of N.Y.
  U.S. Courthouse
   500 Pearl Street, Room 1320
   New York, NY 10007

By Facsimile -- 212-805-7941

Copy, by facsimile, to:
David Ledgin, Esq. -- 516-747-1211

# EXHIBIT 3

**From:** Spencer Schneider <sschneider@slsatty.com>
**To:** davidledgin@aol.com
**Subject:** Re: DMS Diamond
**Date:** Thu, 1 Nov 2007 12:42 pm

David
Here's what Merrill would be willing to do to settle this case:
My client will accept the compilation as a condition to settlement.
Your client can pay his 8k/ mo with 25K bumps every 6 months with the balance due in 18 months (he can refi).
We would take a judgment as security and execute only if he defaults.
The basic interest rate would be increased by 3% from the current rate; additional default interest of 3%
Financial reporting during 18 months: monthly inventory, payables and a/r reports; quarterly compilations, annual tax returns and purchasing partner list.
Spencer


On Nov 1, 2007, at 10:29 AM, davidledgin@aol.com wrote:

> Spencer,
> I must admit to some grateful surprise at your tone--helpful instead of bullying--and I remain optimistic that we will settle.
>
> I have, since seeing your email just a few minutes ago, had a long talk with Steinberg and he advises that he will call his accountant--the same guy who would charge him $6,000 for the formal financial statements your client wants, which fee he cannot afford (and at the same time keep up his monthlies to Merrill Lynch)--and see whether he can obtain documentation of any kind that may satisfy your client's requests in this regard.
>
> However, Steinberg advises that he, himself has no familiarity with what he, himself could send short of the formal (and expensive) statement, so he has asked me to ask you to see whether Bill Sardegna, the guy we dealt with at ML before the lawsuit was filed, knows of any particular docs he would accept in lieu of a formal statement from the accountant, i.e. or e.g., bank statements, inventory lists, etc. If Steinberg didn't have to pay $6,000 to get it, your client would have had what it wanted long ago.
>
> Steinberg further advises that his accountant has assured him that the **personal financial statement** which he did send to your client, tells the entire picture that Merrill Lynch would need to know concerning the financial capabilities and net worth of Marc Steinberg who is, after all, D.M.S. Diamond (as even Her Honor Judge Preska seems to agree).
>
> OK, while I was typing this, Steinberg called back and says his accountant can prepare, within the next week to ten days, something called a "compilation statement"--he says Sardegna would know what that is--and apparently that has the same information contained in the longer, more formal financial statement, which compilation statement he will commission his acountant to do if your client will accept it. I don't expect any special conditions for his providing same, but on the other hand when your client sees that we have not just been blowing smoke anywhere, I am confident that they will prefer to get some money (as they are now) to getting no money (which will happen upon your successfully obtaining a judgment).
>
> **If** they will take that document (or documents) and agree to work with Steinberg, he will offer to make a $25,000 payment at every 6th and 12th month, instead of $8,000, along with the 10 other, regular monthly payments of $8,000, which would mean the debt would be completely paid off in just about two-and-a-half years. This is his absolutely best and last offer, and is conditioned on your client's response to the foregoing matters concerning the financial information. In other words, if ML insists on the formal financial statement, we have nothing to talk about because Steinberg cannot afford the extra $6,000 right now and cannot get them what they want. If they will accept this compilation statement, however, then we may still work this out and your client can continue to get

its money instead of paying out more, i.e., to you, to the marshall or sheriff, etc. while getting nothing back.

Please advise.
                    David
-----Original Message-----
From: Spencer Schneider <sschneider@slsatty.com>
To: davidledgin@aol.com
Sent: Thu, 1 Nov 2007 8:06 am
Subject: Re: DMS Diamond

David,
If your client can do better than his previous bid, make that offer and also supply the hitherto withheld financial information.
Spencer


On Oct 31, 2007, at 2:42 PM, davidledgin@aol.com wrote:

> Okay. But you should keep in mind that if you win, your client's monthly payments would likely stop due to all the added expense of which you write, and due also to my client's inability to keep his finances afloat because of the immediate negative impact on my client's credit your judgment will cause, and, as I have already explained to you, ad nauseum, your client will be hard-pressed to obtain assets (money) from Mr. Steinberg's house, his only real asset.
>
> The "inventory" of his one-man-in-a-booth-business consists, furthermore, of items in which one or more other individuals have an interest. My client has the invoices to prove this. He buys and owns almost nothing alone. How do you propose to get through all of that while billing your client and getting less for them after-judgment than what they were getting before it?
>
> Your "caveat" is totally ineffective, Spencer, as you obviously believe mine to be as well. If you really want to settle it and get something for your client, propose a workable timetable for repayment. Give him something less than three years but not as absurd as only one, but proposes something. You leave him nowhere to go. What a shame it would be for your client to suddenly start actually losing money on the matter when for the last ten years they have been profitting from Steinberg, and ironically have now set the forces in motion that will lead to a cessation of the inflow of money to them!
> -----Original Message-----
> From: Spencer Schneider <sschneider@slsatty.com>
> To: davidledgin@aol.com
> Sent: Wed, 31 Oct 2007 12:31 pm
> Subject: Re: DMS Diamond
>
> This is fine.
> Bear in mind that a motion for summary judgment is very, very expensive.
> If your client loses, he will bear the cost of not only your time, but mine.
>
>
>
> On Oct 31, 2007, at 12:21 PM, davidledgin@aol.com wrote:
>
>> Spencer
>> I would prefer 14 days and 14 days. There are several things coming up for me in early and mid-November which will demand my time, including the possibility of two trials. Please advise.
>>                          David

-----Original Message-----
From: Spencer Schneider <sschneider@slsatty.com>
To: David Ledgin <davidledgin@aol.com>
Sent: Wed, 31 Oct 2007 7.56 am
Subject: DMS Diamond

David
I propose the following briefing schedule: plaintiff's papers due in 10 days; defendant's opposition due in 10 days; plaintiff's reply due in 10 days.
Please advise if this is acceptable.
Spencer


Email and AIM finally together. You've gotta check out free AOL Mail!

=

=

=

# FAX

## Merrill Lynch

| To: | Marc Steinberg |
|---|---|
| Company: | D.M.S. Diamond Co., Inc. |
| Fax: | 212-944-8695 |
| Phone: | 917-653-5668 |
| From: | Bill Sardegna |
| Company: | Merrill Lynch Business Financial Services Inc. |
| | 222 N LaSalle Street, 17th Floor |
| | Chicago, IL 60601 |
| Fax: | 312-499-3252 |
| Phone: | 312-269-4461 |
| Date: | August 21, 2007 |
| Pages: | 4 |

Marc,

Per our conversation today, please forward the following:

- Current Accounts Payable Aging
- Current Accounts Receivable Aging
- Current Detailed Inventory List – detail possession, location and partial interests
- Reviewed 2005 Corporate Financials
- Reviewed 2006 Corporate Financials
- Copy of filed 2005 Tax Return – Marc Steinberg
- Copy of filed 2006 Tax Return – Marc Steinberg
- Current Personal Financial Statement (form attached)
- Member Number/Certificate – Diamond Dealer Club
- List of purchasing partners

Additional items may be requested during due diligence.

Thanks,

Bill Sardegna

*[Handwritten notes: "Marc; to/to what end? 2 no more fnds being advanced; why ask for all this?"]*

Cc: Spencer Schneider, Esq (via electronic mail)

THIS COMMUNICATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND/OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL OF THIS COMMUNICATION TO US AT THE ABOVE ADDRESS VIA THE U. S. POSTAL SERVICE. THANK YOU.