UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MERRILL LYNCH BUSINESS FINANCIAL
SERVICES, INC.,

                                               Plaintiff,

   -against-

07 CV 7048 (LP)

D M S. DIAMOND CO., INC., MARC
STEINBERG, and "JOHN DOE #1 through
"JOHN DOE #12," the last twelve names
being fictitious and unknown to plaintiff, being
persons having or claiming an interest in or lien
upon the Collateral described in the Complaint,

                                               Defendants.
-------------------------------------------------------x

## DEFENDANTS' MEMORANDUM OF LAW IN
## OPPOSITION TO SUMMARY JUDGMENT

Plaintiff has moved for summary judgment notwithstanding the existence of disputed, genuine issues of material fact, and notwithstanding that plaintiff cannot possibly be repaid more quickly by the defendants **after** judgment, than defendants are now repaying. In any event, certain legal issues raised by movant are hereinafter addressed.

### COUNTER-STATEMENT OF FACTS

Plaintiff contends on its instant motion that the defendants (DMS DIAMOND, INC. and MARC STEINBERG) defaulted on loan agreements, at the time of which default, defendants owed $400,000 (see Complaint, Ex. F to Declaration of William Sardegna, hereinafter "Sardegna Declaration").

Plaintiff cannot deny, however, that it communicated to the defendants, in writing, certain repayment terms which terms plaintiff stated were "acceptable" [i.e., to plaintiff] (Ex. 1 to Declaration of Marc Steinberg, hereinafter "Steinberg Declaration") by email dated March 30, 2006—six (6) days *after* plaintiff declared defendants in default and accelerated the entire debt herein (*Id.*).

Plaintiff also cannot deny that, following and pursuant to such modification, defendants paid, and plaintiff accepted, without protest or monetary loss, **twenty (20),** consecutive, on-time, monthly payments of $8,000 each, such that between the time of the declaration of default and today, defendants have reduced the principal obligation owed from $400,000 plus a $20,000 late charge (Ex. 1, Steinberg Declaration, para. 8, footnote), to what will be, after the December, 2007 payment posts, **less than $300,000.**

Notwithstanding that defendants have made these payments, regularly and religiously, paying all interest and other fees charged and without questioning a penny of same, the plaintiff, for some reason instituted the instant action and now seeks summary judgment, knowing that such a judgment would all but ruin defendants financially, jeopardize continued repayment of the debt and, were plaintiff to force defendant Steinberg into foreclosure on his only real asset, to wit: his residence, there would be no equity whatsoever available to be paid to plaintiff! See generally Steinberg Declaration.

Hence, the case at bar is unprecedented in that no person or entity has been known to sue a debtor on a loan document, claiming default, *while the debtor is repaying the loan with interest and late charges.*

This Memorandum of Law in Opposition to Summary Judgment explores the cases relied upon and cited by plaintiff in its Memorandum of Law in Support of [Its]

Summary Judgment Motion and presents support, under New York law, for the denial of summary judgment.

## Argument

### PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT

In the first instance, it should be noted that no case could be found in which a debtor was sued for a default in repayment of a loan, where, as here, the debtor was dutifully repaying the debt.

In fact, plaintiff in the instant case claims not one cent in actual, financial damage beyond the technically-required *ad damnum* clause in the Complaint (Ex. F, Sardegna Declaration), and even acknowledges that defendants have continued to pay down the debt even while the instant motion is being briefed (Sardegna Declaration, para. 13).

The facts of all the cases cited by plaintiff in support of summary judgment are, across the board, distinguishable from the facts of the case at bar. For example, in *Royal Bank of Canada vs. Mahrle*, 818 F.Supp. 60 (S.D.N.Y. 1993), the defendant-obligor therein, by his own admission, defaulted, by cessation of payments, on [his] payments **intentionally**, based upon his misunderstanding of the application of a second set of loan documents, to the repayment of his debt on such default. 818 F.Supp. at 61, col. 2, second full paragraph.

In the case at bar, defendants *never stopped paying, even after commencement of legal action, and even after plaintiff filed its instant summary judgment motion.*

The case of *Hanam, B.V. vs. Kittay*, 589 F.Supp. 1042 (S.D.N.Y. 1984), cited and relied upon by the court in *Royal Bank, supra,* is even more distinguishable, in that, in *Hanam:*

--defendant signed notes and died three (3) months later, without even attempting to repay his debt;

--defendant was represented by legal counsel when he entered into the agreements at issue therein (589 F.Supp. at 1047, first col., last paragraph);

--the collateral for the debt was being sold off by the decedent/debtor's executors, who were leaving the sale proceeds on deposit with a foreign agent (*Id.* At 1048);

--defendant/debtor offered numerous, spurious "facts" in its Rule 3(g) statement and otherwise engaged the court and plaintiff in prolix, frivolous litigation merely as a delay tactic.

Indeed, even after a year of litigation in *Hanam*, after voluminous disclosure proceedings, two new law firms were substituted for the defense and those new lawyers made even more disclosure and deposition demands.

In the case at bar, the defense has been cooperative, and quite the opposite of dilatory, seeking instead to make sense out of a legal action which was really unnecessary to bring.

Plaintiff cites *Nutmeg Financial Services, Inc. vs. Cowden*, 524 F.Supp. 620 (E.D.N.Y. 1981). However, unlike in the instant case, the defendant in *Nutmeg* sought to <u>avoid payment</u> on its obligations by claiming fraud on the part of certain persons in connection with execution of the loan documents at issue therein.

Similarly, in *Western-West Risk Markets, Ltd. Vs. Lumbermens Mutual Casualty Co.*, 314 F.Supp.2d 229 (S.D.N.Y. 2004), the defendants **failed to pay** and continued to ignore demands for payment (*Id.*, at 232).

In sum, every case cited and relied upon by plaintiff in its Memorandum of Law in support, raises the question of "Why?"; *why* does a plaintiff which is getting repaid with interest and late charges, at a handsome monthly rate, to boot, sue an individual and his tiny, one-man business, in the midst of the man's repayment?

One answer, but for the vagaries of New York law, could have been that plaintiff intended to bring to bear against the defendants the threat of a judgment to force defendants to agree to **better terms for the repayment**. Indeed, as is shown by Ex. 3 to the accompanying Steinberg Declaration, after this Court granted plaintiff permission to bring the instant motion, counsel for plaintiff sought to settle the matter by having defendants repay the debt over 18 months, **with an interest rate 3 points higher than that currently being paid** (*Id.*).

Under New York law, there are four elements to the civil wrong known as "abuse of process", to wit:

  1. regularly issued process compelling performance or forbearance of some act;

  2. the person activating the process is moved by an ulterior purpose to do harm, without economic or social excuse or justification;

  3. the person activating the process sought some collateral advantage to the plaintiff that is outside the legitimate ends of the process; and

  4. there must be actual or special damage. 2 N.Y. Pattern Jury Instructions 481 (2d Ed., 2007).

Although the institution of a civil action by summons and complaint is not legally considered "process" capable of being "abused", even when done with malicious intent

In sum, every case cited and relied upon by plaintiff in its Memorandum of Law in support, raises the question of "Why?"; *why* does a plaintiff which is getting repaid with interest and late charges, at a handsome monthly rate, to boot, sue an individual and his tiny, one-man business, in the midst of the man's repayment?

One answer, but for the vagaries of New York law, could have been that plaintiff intended to bring to bear against the defendants the threat of a judgment to force defendants to agree to **better terms for the repayment**. Indeed, as is shown by Ex. 3 to the accompanying Steinberg Declaration, after this Court granted plaintiff permission to bring the instant motion, counsel for plaintiff sought to settle the matter by having defendants repay the debt over 18 months, **with an interest rate 3 points higher than that currently being paid** (*Id.*).

Under New York law, there are four elements to the civil wrong known as "abuse of process", to wit:

  1. regularly issued process compelling performance or forbearance of some act;

  2. the person activating the process is moved by an ulterior purpose to do harm, without economic or social excuse or justification;

  3. the person activating the process sought some collateral advantage to the plaintiff that is outside the legitimate ends of the process; and

  4. there must be actual or special damage. 2 N.Y. Pattern Jury Instructions 481 (2d Ed., 2007).

Although the institution of a civil action by summons and complaint is not legally considered "process" capable of being "abused", even when done with malicious intent

(*Id.*), the elements of the tort of abuse of process are otherwise present in what plaintiff is doing here (Exs. 1 and 3 to Steinberg Declaration).

Movant argues that no writing has been produced signed by plaintiff modifying the terms of the note (Plaintiff's <u>Memorandum of Law in Support of Its Summary Judgment Motion</u>, p.6). However, plaintiff presumes that only *its* form of writing or other instrument called a "writing", is sufficient. No doubt Mr. Sardegna was not thinking of his email of March 30, 2006 (Ex. 1 to Steinberg Declaration) as a "writing", but in a day and age when even signatures are electronically "imputed" and small firms are forced to engage in a type of practice more suited to the wealthy, larger firm, how can a huge banking and investment firm such as plaintiff legitimately claim that a computerized communication is legally meaningless?

In any event, plaintiff should not dictate to this Court precisely what is and what is not, a "writing", and if that be the case, and should this Court agree that the email in question is such a "writing", signed in print and transmitted to both the defendant and his legal counsel, then there was, in fact, a modification of the repayment terms of the parties' original written contracts and agreements.

At the very least, there exists a factual question as to whether defendants may avail themselves of a legitimate defense, such as the modification, or even promissory estoppel (recognized in New York).

But, in the alternative and even were the Court to require more than the aforementioned, emailed communication, New York law also recognizes that a contract can be modified by the **conduct of the parties**:

> "... Subject to the statute requiring the modification of a written contract to be in writing, where the contract provides that it cannot

-6-


be changed orally, *the time for performance of a written contract may be extended by implication, from the acts of the parties."* 22A N.Y.Jur.2d 173; and see *Giventer vs. Antonofsky*, 209 A.D.2d 679 (1924).

Plaintiff concedes that the parties were, as late as February of 2006, having discussions and document exchanges all with a view to reworking the payout term of the loans at issue. See paragraph 10 of Declaration of William Sardegna. Those discussions were many and lengthy, and when plaintiff rejected the plaintiff's proposed payout terms because plaintiff felt defendants had betrayed it by acquiring a loan from another lender (*Id.*), plaintiff called in the entire debt—**and even then continued to negotiate with defendants from March, 2006 until the very present day.**

Plaintiff therefore must also concede that it knew then, as it knows now, that Steinberg cannot repay the debt in full; other than the terms of repayment, there were no new loans and therefore no other terms to discuss, after February of 2006. Plaintiff then proceeded to accept defendants' payout schedule without further protest until someone in plaintiff's organization decided to put the screws to Marc Steinberg. But under New York law, this does not end the discussion:

> "[P]roposals for modification are, in effect, really notices of termination of that agreement and offers for a new agreement, and where the opposing party does not protest the modifications, but rather continues to perform thereunder, it cannot protest that the original agreement was breached"
> 22A N.Y.Jur.2d 170; and see cases cited thereunder.

Based upon the foregoing law and undisputed facts in the instant case, summary judgment, at this time, is inappropriate.

**Conclusion**

-7-

For all of the foregoing reasons, the defendants respectfully request that plaintiff's motion for summary judgment be denied, and that the Court grant such other and further relief as may be just and proper.

Dated: Mineola, New York
      November 23, 2007

DAVID H. LEDGIN (DL-8188)

*[signature]*

David H. Ledgin
Attorney for Defendants Steinberg
   and DMS Diamond, Inc.
1539 Franklin Avenue, Suite 201
Mineola, N.Y. 11501
Tel. 516-747-1210
Fax 516-747-1211
Email: davidledgin@aol.com